NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ASSEM A. ABULKHAIR, | : | |
| | : | |
| Plaintiff, | : | **Hon. Dennis M. Cavanaugh** |
| | : | |
| v. | : | **OPINION** |
| | : | |
| GEORGE W. BUSH, President of the United States of America *et al*, | : | Civil Action No. 08-CV-5410 (DMC) (MF) |
| | : | |
| Defendants. | : | |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

This matter comes before the Court upon motions of the various defendants to this action, including the United States of America, the United States Citizenship and Immigration Services ("USCIS"), and various current and former federal officials, individually and in their official capacities (collectively, "Defendants").[1] Defendants move to dismiss the Amended Complaint of Assem A. Abulkhair ("Plaintiff"), who filed this action seeking a variety of damages for alleged civil rights violations that occurred during the consideration of his naturalization application. Pursuant to his Amended Complaint, Plaintiff seeks a judgment against the Defendants in the amount of "$100,000,000.00 (one hundred million dollars) plus punitive damages," and additionally, seeks

---

[1] The individual federal defendants are: George W. Bush, former President of the United States; (2) Michael Mukasey, former Attorney General of the United States; (3) Michael Chertoff, former Secretary of the Department of Homeland Security ("DHS"); (4) Robert S. Mueller, III, Director, Federal Bureau of Investigation ("FBI"); (5) Michael V. Hayden, former Director, Central Intelligence Agency ("CIA"); (6) Emilio T. Gonzalez, former Director of USCIS; and (7) John Thompson, District Director, USCIS, Newark Service Center (the "individual federal Defendants"),

judicial review of his denied naturalization application.

Defendants move to dismiss Plaintiffs' monetary claims against the United States and the federal employees in their official/individual capacities; Defendants also move for summary judgment, requesting that this Court deny Plaintiff's petition for naturalization, in accordance with the previous decision of the USCIS. For the reasons stated below, Defendants' motions are **granted**.

## I. BACKGROUND[2]

Plaintiff filed his Amended Complaint on May 14, 2009, seeking monetary damages for alleged violations of his constitutional rights, as well as a review of USCIS's denial of his application for naturalization to become a United States citizen. See Doc. No. 22-1, at 4. Plaintiff's claims are based upon his contention that his naturalization application was denied "for one single reason of which [h]e is being a Moslem living in the U.S." Id.

Plaintiff is a native and citizen of Egypt. See id. On October 31, 1987, Plaintiff came to the United States as a visitor and was authorized to stay until October 30, 1988. Id. Plaintiff overstayed his visa. Id. In September 1995, Plaintiff was charged as being removable pursuant to the Immigration and Nationality Act ("INA") for overstaying his non-immigrant visa. Id. On February 13, 1997, an Immigration Judge ("IJ") granted Plaintiff a suspension of deportation and terminated Plaintiff's deportation proceedings. See id. On July 3, 1997, Plaintiff was granted legal permanent residence as of February 13, 1997. See id.

Plaintiff prematurely filed a N-400 Petition for Naturalization with USCIS. After it was returned to him, Plaintiff resubmitted it on November 24, 2001. See id. USCIS processed the N-400 as filed on November 29, 2001. See id. In his naturalization application, Plaintiff stated that he

---

[2] The facts in the Background section have been taken from the parties' submissions.

resided in Paterson, New Jersey from October 1, 1989 to March 20, 2000, and that he resided in Passaic, New Jersey from March 20, 2000 to the date of filing his application. Id. at 4-5. Plaintiff also stated that he was previously employed with PPI/Time Zero from December 28, 2000 to July 23, 2001 as a Kit Auditor. Id. at 5. Further, Plaintiff asserted that he was employed with Passaic Employment Services from May 2002 to the "present" (i.e., the time of application) as a clerk. Id.

On October 16, 2002, USCIS conducted Plaintiff's naturalization interview. See id. No decision on Plaintiff's application was made at that time because USCIS requested that Plaintiff provide additional information. See id. Specifically, USCIS requested that Plaintiff submit: his Egyptian passport, or an affidavit from the Egyptian Consulate stating that they had retained the passport (as Plaintiff had previously told USCIS in his naturalization interview); Plaintiff's "Original" U.S. Re-entry Permit; proof of residence since 1996; police/arrest records; and court disposition records. Id. USCIS gave Plaintiff until November 15, 2002 to comply. Id.

On November 6, 2002, Plaintiff submitted a letter to USCIS stating that he was attempting to comply with USCIS's document request. Id. Plaintiff stated that he had written the Egyptian Consulate requesting a statement from the Consulate to comply with USCIS's request, and he attached a letter that he allegedly mailed to them on October 21, 2002. Id. at 6. Further, Plaintiff provided an affidavit stating that he believed that the original U.S. Re-entry Permit "no longer exist[s]." Id.[3] Additionally, Plaintiff informed USCIS that he had only left the country once (on December 9, 1998, returning on February 17, 1999). Id.

On December 31, 2002, Plaintiff's naturalization application was denied. See id. USCIS

---

[3] He explained that he was not aware that the Permit would be required as evidence because its expiration date had passed. Id.

denied the application because Plaintiff failed to show proof of his continuous residence in the United States during the five years preceding his application, see id., and because Plaintiff failed to properly prosecute the application (i.e., fully respond to USCIS's document request, etc.).

On January 29, 2003, Plaintiff filed a N-336 (Request for a Hearing on a Decision in Naturalization Proceedings under Section 336 of the INA), appealing USCIS's denial of his application for naturalization. See id. at 7. In Plaintiff's brief in support of his request for a hearing, Plaintiff stated that he had "overwhelming clear and convincing undisputed evidence" to prove his continuous residence—in addition to various other assertions regarding the other documents that were requested by the USCIS. Id.

On July 18, 2003, Plaintiff was scheduled for a hearing to review the denial of his application. At the appellate hearing, Plaintiff was issued a N-14 Request for Documents to provide additional proof of residence during the statutory period. See id. Specifically, the N-14 Request for Documents required Plaintiff to provide additional proof of residence in the form of proof of income taxes paid to the Internal Revenue Service ("IRS") from 1996 to 2001 and "copies of cancelled checks for 1996 to the present." Id.

On October 8, 2003, Plaintiff submitted a letter to USCIS and attached a correspondence that he purportedly submitted to the IRS requesting that the IRS provide him with copies of his income tax returns for 1996 through 1998. Id. at 8.

On September 15, 2008, USCIS denied Plaintiff's N-336. USCIS determined that Plaintiff's original naturalization application was denied on the basis of lack of continuous residency and lack of prosecution. Id. In its review of the denial, USCIS noted that it considered Plaintiff's N-400 application and the documents submitted with his appeal. Id. USCIS found that Plaintiff's response

was deficient because Plaintiff: failed to provide a passport or re-entry permit showing his trips out of the United States during the five-year statutory period of inquiry; failed to respond to USCIS's request for income tax information; and, did not provide original or certified court dispositions for any of his arrests. Id. Accordingly, USCIS held that the conditions that resulted in the denial of the N-400 naturalization application had not materially changed. It, therefore, denied Plaintiff's N-336 request for the same reasons the N-400 naturalization application was denied. Id.

On November 3, 2008, Plaintiff initially brought this action, asserting improper delay, and alleged bias, in the review of his application for naturalization. See id. at 9. On December 19, 2008, this Court dismissed the Complaint. Id.

On April 14, 2009, after Plaintiff provided additional information to this Court, Plaintiff was permitted to proceed on his claims. In particular, the Court observed that Plaintiff had not previously notified the Court that he had already appealed the denial of his naturalization application to a USCIS administrative officer, and that Plaintiff was now seeking relief under 8 U.S.C. § 1421(c). Id. This Court then ordered the Plaintiff to amend his Complaint by May 25, 2009. Id.

On May 14, 2009, Plaintiff filed his Amended Complaint, asserting that his naturalization application was denied "for one single reason of which [h]e is being a Moslem living in the U.S." Id. In the Complaint, he seeks monetary damages, and asks the Court to grant his application for naturalization and "declare him to be a national of the United States." Id. at 10.

The motions pending before this Court are: **(A)** Defendants' motion to dismiss Plaintiff's monetary claims against the United States, USCIS and the federal employees (in their official capacities) for lack of subject matter jurisdiction; **(B)** Defendants' motion to dismiss Plaintiff's monetary claims against the federal employees in their individual capacities; and **(C)** Defendants'

motion for summary judgment, requesting that this Court deny Plaintiff's petition for naturalization, in accordance with the previous decision of the USCIS.

## II.  APPLICABLE LAW

The Court will set forth the law applicable to Defendants' various motion to dismiss Plaintiff's Amended Complaint.

### A.  SUBJECT MATTER JURISDICTION

1.  Fed. R. Civ. P. 12(b)(1)

The burden is on the plaintiff to prove that subject matter jurisdiction exists.  Wyeth and Cordis Corporation v. Abbott Laboratories, 2008 U.S. Dist. LEXIS 38313, * 2 (D.N.J. May 8, 2008). In Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884 (3d Cir. 1977), the Third Circuit explained that RULE 12(b)(1) motions fall into two categories:  facial and factual.  International Development Corporation v. Richmond, 2009 U.S. Dist. LEXIS 106326, at * 2 (D.N.J. Nov. 13, 2009).  "A facial attack on jurisdiction is directed to the sufficiency of the pleading as a basis for subject matter jurisdiction."  Id.  Accordingly, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff."  Gould Electronics, Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).

In contrast, when the court considers a factual attack on jurisdiction under 12(b)(1), "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen, 549 F.2d at 891.  No presumption of truthfulness attaches to the allegations of the complaint insofar as they concern subject matter jurisdiction.  Id.  Should factual issues arise regarding subject matter jurisdiction, the court may consider exhibits outside the pleadings.  Gould

Electronics, 220 F.3d at 178. "In general, when a Rule 12(b)(1) motion is supported by a sworn statement of facts, the court should treat the Defendant's challenge as a factual attack on jurisdiction." International Development Corporation v. Richmond, 2009 U.S. Dist. LEXIS 106326, at * 2 (quoting Med. Soc'y of N.J. v. Herr, 191 F.Supp.2d 574, 578 (D.N.J. 2002)).

          2.  Sovereign Immunity & The Federal Tort Claims Act

The United States has sovereign immunity from suit, except to the extent that it consents to be sued. See FDIC v. Meyer, 510 U.S. 471, 475 (1994); United States v. Mitchell, 445 U.S. 535, 538 (1980). The Federal Tort Claims Act provides a limited waiver of the United States' immunity from tort claims. See United States v. S.A. Empresa de Viacao Aerea Rio Grandense, 467 U.S. 797, 808 (1984). Accordingly, if the United States has not waived sovereign immunity as to a certain claim under the FTCA, the claim must be dismissed for lack of subject matter jurisdiction. See Bernitsky v. United States, 620 F.2d 948, 950 (3d Cir. 1980).

"A party suing the federal government bears the burden of establishing that the United States has unequivocally waived its immunity from suit." United States v. Schiaffino, 317 Fed. Appx. 105, 106 (3d Cir. Mar. 25, 2009) (citing Baker v. United States, 817 F.2d 560, 562 (9th Cir. 1987), cert. denied, 487 U.S. 1204 (1988)).

In some instances, federal officials acting in their official capacity can be subject to suit for constitutional torts under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Bivens, however, does not apply to the United States, its agencies or federal officers sued in their official capacities, as "[t]his implied right of action only applies against the individual [federal employees] in their individual capacities [because] The United States and its officers in pursuit of their official duties remain protected by sovereign immunity." Williamson v.

U.S. Dept. of Agric., 815 F.2d 368, 380 (5th Cir. 1987) (collecting cases); see also F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994), Jaffee v. United States, 592 F.2d 712, 717-18 (3d Cir.), cert denied, 441 U.S. 961 (1979) (no waiver of the United States' sovereign immunity for suits alleging constitutional violations).

### B. SUMMARY JUDGMENT

A party whose application for naturalization has been denied may seek *de novo* review in a district court pursuant to 8 U.S.C. § 1421(c). Under this statute:

> [a] person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) 3 of this Title, may seek review of such denial before the United States District Court for the district in which such person resides in accordance with chapter 7 of Title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the Petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c). Upon conducting such a review, a Court may properly entertain motions for summary judgment. See Chan v. Gantner, 464 F.3d 289, 295-96 (2d Cir. 2006).

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing either (1) there is no genuine issue of fact and it must prevail as a matter of law; or (2) the non-moving party has not shown facts relating to an essential element of the issue for which he bears the burden. Celotex, 477 U.S. at 331. If either showing is made then the burden shifts to the non-moving party, who must demonstrate facts that support each element for which he or she bears the burden and must establish the existence of genuine issues of material fact. Id. The Court will consider all facts and

their reasonable inferences in the light most favorable to the non-moving party. See Penn. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

A party opposing a motion for summary judgment "may not rely merely on allegations or denials in its own pleading," and must "furnish, with its opposition, papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement and disagreement . . ." See L. Civ. R. 56.1(a). A failure to do so results in a court treating all undisputed material facts as uncontroverted for the purposes of the summary judgment motion. See, e.g., Bainbridge v. Mid-State Filigree Sys., LLC, 2009 U.S. Dist. LEXIS 106517, at *4 ("[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion[; as] plaintiff has failed to respond, the Court is entitled to treat defendant's Rule 56.1(a) statement as uncontroverted."); Hooten v. Schaaff, 2008 U.S. Dist. LEXIS 34193 (D.N.J. Apr. 24, 2008) (same).

A defendant's unsworn brief in opposition to a motion is not affirmative evidence, much less evidence sufficient to defeat an amply supported motion for summary judgment by creating a genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).

### C. NATURALIZATION - LEGAL FRAMEWORK

To apply for naturalization, an individual must first submit completed application materials to USCIS, including a complete and accurate Form N-400 application, a set of fingerprints, criminal background information, and information reflecting his or her satisfaction of the statutory eligibility requirements. See generally 8 U.S.C. § 1445(a); 8 C.F.R. §§ 316.2, 316.4, 334.1 and 334.2. USCIS then conducts an investigation of the applicant's background. 8 U.S.C. § 1446(a); 8 C.F.R. §§ 335.1 and 335.2(b). Next, the applicant undergoes testing with respect to the statutory requirements that he or she demonstrate language proficiency and knowledge of basic national history. See 8 U.S.C.

§ 1423(a) 8 C.F.R. § 312.  Then, the applicant is examined under oath by a USCIS naturalization officer who will either approve or deny the application.  8 C.F.R. §§ 316.14 and 335.2-3.

If a naturalization application is denied, the applicant may file a request for a hearing on the denial before a different officer who is of the same grade or higher, pursuant to INA § 336(a), 8 U.S.C. § 1447(a).  See 8 C.F.R. §§ 336.1-.2.

### III. DISCUSSION

The three motions pending before this Court are: **(A)** Defendants' motion to dismiss Plaintiff's monetary claims against the United States, USCIS and the individual federal defendants (in their official capacities) for lack of subject matter jurisdiction; **(B)** Defendants' motion to dismiss Plaintiff's monetary claims against the federal employees in their individual capacities; and **(C)** Defendants' motion for summary judgment, requesting that this Court deny Plaintiff's petition for naturalization, in accordance with the previous decision of the USCIS.

> **A.**  **DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MONETARY CLAIMS AGAINST THE UNITED STATES, USCIS AND THE INDIVIDUAL FEDERAL DEFENDANTS (IN THEIR OFFICIAL CAPACITIES) FOR LACK OF SUBJECT MATTER JURISDICTION**

The United States asserts that sovereign immunity bars Plaintiff's claims, and moves for dismissal pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction.[4]

The Federal Tort Claims Act ("FTCA") provides a limited exception to the United States' immunity.  The FTCA waives the federal government's sovereign immunity for certain tort claims provided the plaintiff's claim is timely filed and that the plaintiff properly follows the statutory

---

[4] Plaintiff's claims against a federal agency (or a federal official in his or her official capacity), are treated as a suit against the United States.  See Kentucky v. Graham, 473 U.S. 159, 166 (1985); Dugan v. Rank, 372 U.S. 609, 620 (1963); Deutsch v. Fed. Bureau of Prisons, 737 F. Supp. 261, 265 (S.D.N.Y. 1990).  The Court's references to the United States, therefore, will encompass USCIS and the individual federal defendants in their official capacities.

procedures. See 28 U.S.C. §§ 1346(b), 2671-80.

As noted above, Plaintiff's claims are cognizable only insofar as the United States has waived its sovereign immunity. See Bernitsky, 620 F.2d at 950. Accordingly, to the extent Plaintiff's claims are barred by immunity, they must be dismissed. The Court finds that Plaintiff's claims, here, must be dismissed for two distinct reasons.

First, as an initial matter, Plaintiff has not plead a valid constitutional claim. His bald allegation that his naturalization application was denied because of his religion is completely unsupported by facts. The Complaint, then, is insufficient as a court need not credit either "bald assertions" or "legal conclusions" when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). In fact, the USCIS's decision to deny Plaintiff's naturalization was the reasonable result following his failure to fully prosecute the application. See Section II, infra; III.C, supra.

Second, even if Plaintiff did plead a valid claim under the FTCA, the FTCA requires that a plaintiff must file his or her claim with the federal agency in question, and the agency must issue a final denial of the claim. 28 U.S.C. § 2675(a); McNeil v. United States, 508 U.S. 106, 110-11 (1993); Bialowas v. United States, 443 F.2d 1047, 1049 (3d Cir. 1971). The presentment requirement gives the agency an opportunity to pay the claim in full, to offer to settle the claim, or to deny the claim within six months. As indicated in Defendants' declaration, Plaintiff did not present his constitutional claims to the appropriate federal agency within 2 years after such claim accrued, and therefore did not satisfy the presentment requirement prior to filing suit. 28 U.S.C. § 2401(b); McNeil, 508 U.S. at 109.

For the reasons stated, Defendants' motion to dismiss Plaintiff's claims against the United

States is granted.

### B. DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S MONETARY CLAIMS AGAINST THE INDIVIDUAL FEDERAL DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES

Plaintiff names a number of federal officials in their individual capacities as Defendants to this action. The Court will construe such claims as claims brought pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). To prevail on a Bivens claim, a plaintiff must show that he has been deprived of a right secured by the Constitution, and that the defendant(s) deprived him of that right under color of federal law. See Mahoney v. Nat'l Org. for Women, 681 F. Supp. 129, 132 (D. Conn. 1987) (citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56 (1978)). Here, Plaintiff alleges that the individual Defendants acted in a discriminatory manner in handling his naturalization application. Plaintiff's Bivens claims must fail.

First, for the same reasons as stated above, the Court will not credit Plaintiff's "bald assertions" that Defendants were involved in a violation of his constitutional rights. Burlington Coat Factory, 114 F.3d at 1429-30. Plaintiff merely asserts that there is a policy of discriminating against Muslims, and then goes on to name several high-level officials. However, as Defendants' observe, "the purpose of Bivens is to deter individual federal officers from committing constitutional violations" and thus, federal officers may only be subject to suit for constitutional violations if they are "directly responsible" for them. Correctional Serv. Corp. v. Malesko, 534 U.S. 61, 70-71 (2001); see also Iqbal, 129 S. Ct. at 1949 (finding that "bare assertions" that government officials "knew of" and "condoned" allegedly unconstitutional conduct were insufficient to state a claim; further noting that such officials could not be liable simply by virtue of their supervisory roles).

Second, the statute of limitations for Bivens claims is taken from the forum state's personal injury statute. Kost v. Kozakiewicz, 1 F.3d 176, 190 (3d Cir. 1993); see also Napier, 855 F.2d at 1087 n.3 (noting that the same statute of limitations applies to both Bivens and 42 U.S.C. § 1983 claims). The cause of action for Bivens claims accrues when the Plaintiff knows of or has reason to know of the injury. Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998). The alleged injury—purported violations of Plaintiff's constitutional rights—began when Defendants failed to make a determination on his naturalization application within 120 days of his October 16, 2002 naturalization interview. See Doc. No. 7, ¶ 42.[5] Accordingly, the statute of limitations began to run at least as early as February 13, 2003 (the date that the 120-day period expired). Plaintiff's original complaint in this matter, filed on November 3, 2008, was therefore filed three and a half years after the statutory period ran.

Plaintiff's Bivens claims against the federal officials in their individual capacities must fail.[6]

### C. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ASKING THAT THIS COURT DENY PLAINTIFF'S PETITION FOR NATURALIZATION, IN ACCORDANCE WITH THE PREVIOUS DECISION OF THE USCIS

Defendants ask that this Court grant their motion for summary judgment, and deny Plaintiff's petition for naturalization, in accordance with the previous decision of the USCIS. Defendants asserts that Plaintiff has failed to establish that he satisfies the statutory requirements for naturalization. See 8 U.S.C. § 1427; Berenyi v. District Director, 385 U.S. 630, 636-37 (1967). The Court agrees.

---

[5] A decision was not rendered because the USCIS requested additional documentation prior to making its determination. See Sections II, infra; III.C, supra.

[6] Although the Court need not separately address the argument here, it appears likely that Plaintiff has failed to establish personal jurisdiction over most of the individual Defendants.

Applicants for naturalization are required to (1) reside continuously in the United States for at least five years after being lawfully admitted for permanent residence; (2) maintain physical presence in the United States for the five years immediately preceding the application date; (3) reside in the United States "from the date of the application up to the time of admission to citizenship"; and, (4) during all such periods, establish and maintain "good moral character." 8 U.S.C. § 1427(a); INA § 316(a). The Court, then, must determine whether Plaintiff has satisfied the residency and physical presence requirements (Steps 1-3), and the "good moral character" requirement (Step 4), for naturalization.

As discussed above, on September 15, 2008, USCIS denied the Plaintiff's N-336 for lack of continuous residency and lack of prosecution.[7] This Court agrees, and in particular, finds that Plaintiff's submissions have failed to demonstrate continuous residency/presence.

1. Residency and Physical Presence

Here, USCIS requested that Plaintiff provide proof of presence/residence for the 1996-2001 period in the form of residence and income tax information (among other documentation). Plaintiff failed to submit the requested information. With the burden of showing fulfilment of the statutory criteria remaining on Plaintiff, see Berenyi v. INS, 385 U.S. at 637, his failure to provide the requested documentation was fatal to his application for naturalization.

Similarly, here, in view of the record evidence, the Court does not find that Plaintiff

---

[7] USCIS found that the Plaintiff's response to a request for documentation was deficient because the Plaintiff: failed to provide a passport or re-entry permit showing his trips out the United States during the five-year statutory periods; failed to respond to USCIS's request for income tax information; and, failed to supplement his file with original or certified court dispositions for any of his arrests. Id. USCIS then held that the conditions that resulted in the denial of the N-400 naturalization application had not changed, and it denied the Plaintiff's N-336 request for the same reasons the N-400 naturalization application was denied.

established his residence and physical presence. It appears that Plaintiff used a P.O. Box address in Clifton, New Jersey for his correspondence and bills—despite the fact that he designated Passaic and Paterson, N.J. as his two continuous places of residence. This inconsistency justifies denial of his application. See Alvear v. Kirk, 87 F. Supp. 2d 1241, 1243 (D.N.M. 2000) (granting summary judgment in favor of the INS where, "[a]lhough Plaintiff established physical presence in the United States during the five year period preceding the date of his application, he [ha]s not establish[ed] the whereabouts of his actual residence [as] Plaintiff has simply failed to present any evidence of residence, or his actual principal dwelling place in the United States during the five year period prior to filing his application for naturalization."). Plaintiff has not established continuous residence/presence in the United States.

2. Good Moral Character

Defendants argue that Plaintiff similarly failed to meet his burden to demonstrate that he is an individual of good moral character by failing to submit tax returns that were explicitly requested by USCIS. In particular, Defendants note that Plaintiff did not provide the complete income tax information that was requested—Plaintiff only provided a tax return for one year of the 1996-2001 period.

The Court notes that failure to file tax returns or otherwise comport with civic responsibilities can in some instances prevent a naturalization applicant from demonstrating "good moral character." See Gambino v. Pomeroy, 562 F. Supp. 974, 987 (D.N.J. 1983); see also El-Ali v. Carroll, 1996 U.S. App. LEXIS 8747, at *10-17 (4th Cir. Va. Apr. 22, 1996); Santana-Albarran v. Ashcroft, 393 F.3d 699, 706-07 (6th Cir. 2005); see also Iqbal v. Bryson, 604 F. Supp. 2d 822, 828 (E.D. Va. 2009); Puciaty v. United States DOJ, 125 F. Supp. 2d 1035, 1041 (D. Haw. 2000).

Plaintiff's "good moral character," however, need not be considered on the present motion—having failed to establish residency and physical presence in his application, summary judgment in favor of Defendants is appropriate.[8]

### IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss Plaintiff's monetary claims against the United States and the federal employees (in their official capacities) is **granted**; Defendants' motion to dismiss Plaintiff's monetary claims against the federal employees in their individual capacities is **granted**; and Defendants' motion for summary judgment with respect to Plaintiff's naturalization application is **granted**.

    S/ Dennis M. Cavanaugh
    Dennis M. Cavanaugh, U.S.D.J.

Date:      June    14   , 2010
Original:  Clerk's Office
cc:        All Counsel of Record
           The Honorable Mark Falk, U.S.M.J.
           File

---

[8] Plaintiff's failure to file tax return information is also relevant to assessing Plaintiff's continuous residency. See Section I, supra, at p. 4-5; see also Santana-Albarran, 393 F.3d at 706-07 (6th Cir. 2005); Shyiak v. Bureau of Citizenship & Immigration Servs., 579 F. Supp. 2d 900, 903, 907 (W.D. Mich. 2008).